# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| FAIRVIEW HOSPITALITY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:17-CV-267-BH |
| | § | |
| STATE BANK OF TEXAS, et al., | § | |
| | § | |
| Defendant. | § | Consent Case[1] |

## MEMORANDUM OPINION AND ORDER

Before the Court is *State Bank of Texas's Second Motion for Summary Judgment*, filed March 22, 2019 (doc. 99). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED**.

### I. BACKGROUND

Fairview Hospitality, LLC (Plaintiff), is an Oklahoma hospitality company that acquires, constructs, develops, and manages a chain of hotels in and around Oklahoma. (docs. 101 at 6; 105-1 at 3.)[2] Plaintiff contracted with Ajit B. Multani d/b/a Multani Construction (Multani) to be the general contractor for the construction of a hotel in Oklahoma. (docs. 101 at 6-7; 105-1 at 3.) Multani was tasked with selecting and hiring subcontractors, "distributing subcontractor payments, and supervising any and all subcontractors utilized in construction of the [h]otel and was responsible for the work product of his subcontractors." (docs. 101 at 7; 105-1 at 3.) In order to pay the various subcontractors, Plaintiff provided checks drawn on its bank, Farmers and Merchants National Bank

---

[1] By consent of the parties and order filed December 21, 2018, this matter has been transferred for the conduct of all further proceedings and the entry of judgment. (doc. 97.)

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

of Fairview (F & M Bank), that were "properly completed and payable to various subcontractors to Multani" so that he could subsequently distribute them to the subcontractors. (*Id*.) Multani ultimately failed to complete the hotel job, "and a large portion of the work actually done was not completed in a good and workmanlike manner," which resulted in Plaintiff having to pay for the work to be completed properly. (docs. 101 at 7; 105-1 at 4.)

"After being confronted by an unpaid subcontractor in May of 2015, [Plaintiff] discovered that Multani" had inflated the amounts owed before submitting subcontractor invoices and had "forged the payee indorsements on at least sixteen (16) subcontractor checks" that were given to him to distribute to the subcontractors. (docs. 101 at 7; 105-1 at 5.) The sixteen checks totaled $509,814.00. (docs. 101 at 8; 105-1 at 6.)[3] Plaintiff notified F & M Bank shortly after discovering the forged indorsements. (docs. 101 at 7; 105-1 at 5-6.)

Multani cashed the subcontractor checks at Love Field Mart and Cockrell Hill Texaco. (docs. 101 at 7; 105-1 at 5.) Love Field Mart could not cash checks in excess of $20,000 without prior approval from One World Bank "and verification from the drawer or its bank that the checks were properly payable." (docs. 101 at 9; 105-1 at 8.) When Multani presented Love Field Mart with checks that were for more than $20,000, Love Field Mart tendered the checks to Cockrell Hill Texaco, which would then cash the check, minus its 1% fee, for Love Field Mart to provide to Multani, and then Cockrell Hill Texaco would deposit the check with State Bank of Texas (Defendant). (docs. 101 at 8-9; 105-1 at 8.) Defendant subsequently presented the checks to F & M Bank for payment. (docs. 101 at 8; 105-1 at 7.)

---

[3] Three of the sixteen checks, amounting to $29,500.00, were subject to a joint stipulation of settlement and dismissal with prejudice as to One World Bank "and are no longer at issue in this lawsuit." (docs. 101 at 8; 105-1 at 13.)

Plaintiff sued F & M Bank and Multani and others in state court. (doc. 105-1 at 12.) Multani declared bankruptcy, and F & M Bank was granted summary judgment on Plaintiff's claims of common law negligence and breach of contract. (*See* docs. 101 at 101-02, 143-45; 101-2 at 112-13; 105-1 at 12.) Plaintiff then non-suited its claims against the other parties. (doc. 101-2 at 114-15.)

On January 27, 2017, Plaintiff filed this lawsuit suit against Defendant, One World Bank, SD & HR Investment Group, Inc. d/b/a Cockrell Hill Texaco (Cockrell Hill Texaco), and Lee Su and Sung Su d/b/a Love Field Mart (collectively, Love Field Mart).[4] (doc. 1 at 1.) Its amended complaint asserts claims under § 3.406 of the Texas Business and Commerce Code as well as claims for fraud by non-disclosure, conversion, negligence, gross negligence and conspiracy to commit fraud and theft of property. (doc. 89 at 8-17.) Its only claim against Defendant is under § 3.406(b) for Defendant's alleged failure to exercise ordinary care in accepting the checks at issue. (*Id.* at 8-9.) It seeks actual damages, attorney's fees, costs, and pre-judgment and post-judgment interest against all of the remaining defendants, as well as additional actual damages and exemplary damages. (*Id.* at 19.)[5]

On March 22, 2019, Defendant moved for summary judgment on the only claim against it under § 3.406(b), on grounds that it "did not fail to use ordinary care in accepting the indorsed checks" because the checks were accepted consistent with its procedures, and its procedures "are all consistent with general banking practices as adopted in the Dallas/Fort Worth Metroplex." (doc. 100 at 7.) Its usual course of business was to accept the checks deposited by Cockrell Hill Texaco, process them for deposit through an automated system that does not require anyone to look at each

---

[4] Plaintiff also designates Lee Su as d/b/a Lee Check Cashing but refers to both Lee Su and Sung Su as Love Field Mart in its amended complaint. (*See* doc. 89.)

[5] Plaintiff and One World Bank settled, and it was dismissed from this lawsuit with prejudice. (doc. 11.)

individual indorsement, and then present them to F & M Bank through the Federal Reserve. (doc. 101-2 at 125.) It did not meet with Cockrell Hill Texaco's customers and does not independently verify the identities of check indorsers. (*Id*.)

Plaintiff points to the designated payees and payee indorsements on the checks, contending that "the actual payee indorsements [were] not 'substantially similar' to the designated payees" and did "not include any principal/agent designations for the purported indorsers." (docs. 104 at 12; 105-1 at 8-11.) It argues that Defendant failed to exercise ordinary care because it failed to examine the subcontractor checks and confirm that the payee indorsements were substantially similar to the named payees on each of the checks, and that this failure caused its damages. (doc. 104 at 23, 25.)

With a timely filed response and reply, the motion is ripe for determination. (docs. 103-06.)

## II. EVIDENTIARY OBJECTION

Defendant presented the Affidavit of Janna Hayes (Hayes Affidavit) in support of its motion. (doc. 101-2 at 124-29.) Plaintiff responded with the Declaration of Tejal Patel (Patel Declaration) and the Declaration of Dennis Simmons (Simmons Declaration). (doc. 105-1 at 2-13, 66-78.) Defendant objects that the entire Simmons Declaration "is conclusory and should not be considered." (doc. 106 at 2-4.)

**A.** **<u>Simmons Declaration</u>**

A "declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "[A] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Stagliano v. Cincinnati Ins. Co.*, 633 F. App'x 217, 219 (5th Cir. 2015) (citing *Turner*

4

*v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). Declarations "setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Id*. at 220 (quoting *Orthopedic & Sports Injury Clinic v. Wang Lab., Inc.*, 922 F.2d 220, 225 (5th Cir. 1991)); *see Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985). "Without more than credentials and a subjective opinion, an expert's testimony that 'it is so'" will not suffice. *Orthopedic & Sports Injury Clinic*, 922 F.2d at 225 (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 424 (5th Cir. 1987)).

The Simmons Declaration discusses portions of the Texas Business and Commerce Code and sets out his opinion as to what constitutes ordinary care in the banking industry as well as his ultimate conclusion that Defendant failed to exercise ordinary care in presenting the relevant checks to Plaintiff's bank. (*See* doc. 105-1 at 67-78.)[6] He examined each of the checks and determined that they were not properly payable because the indorsements were not substantially similar to the named payee. (*Id*. at 69-76.) He claims that the substantial amounts and the fact that they were cashed at check cashing businesses should have raised suspicions and "reasonable commercial standards would require that [Defendant] . . . take additional precautionary measures to ensure that the checks were properly payable." (*Id*. at 76-77.) While not required, he states that it is "good practice within the banking industry" to "require confirmation with the drawer or drawee bank that the subcontractor checks were properly payable," and that a bank's disclaimer that it processes checks with automated systems, or that it does not verify identities of check indorsers, does not absolve the bank of its "obligation to exercise ordinary care and observe reasonable commercial standards when

---

[6] The Simmons Declaration also discusses checks that were deposited to One World Bank, which has settled with Plaintiff, so it is unnecessary to consider that portion of it.

processing checks for payment." (*Id*. at 77.) Simmons ultimately opines that Defendant is 20% at fault for Plaintiff's loss because it "failed to exercise ordinary care in presenting" the checks to Plaintiff's bank "for payment and said failure to exercise ordinary care substantially contributed to [Plaintiff's] loss associated with the payment of those checks." (*Id*. at 77-78.)

The Simmons Declaration only sets forth conclusory facts and conclusions of law regarding the checks and Defendant's alleged acts. (*See id*. at 67-78.) As noted, this is not sufficient to defeat summary judgment. *See Orthopedic & Sports Injury Clinic*, 922 F.2d at 225; *Galindo*, 754 F.2d at 1216. The declaration fails to recite any facts supporting its conclusions that Defendant failed to exercise ordinary care. Rather, the conclusory statements that the checks were not properly payable based on the indorsements, and that Defendant failed to exercise ordinary care, essentially amount to statements from Plaintiff's expert that "it is so", and do not suffice to defeat Defendant's motion. *See Orthopedic & Sports Injury Clinic*, 922 F.2d at 224–25 (finding that an expert's opinion should not be considered in response to a summary judgment motion because it was conclusory and inadequately supported); *Generation Trade, Inc. v. Ohio Sec. Ins. Co.*, No. 3:18-CV-0434-K, 2019 WL 2189240, at *9 (N.D. Tex. May 21, 2019) (determining that conclusory expert assertions in an affidavit did "not constitute competent summary-judgment evidence that would create a genuine dispute of material fact."); *Young v. Allstate Vehicle & Prop. Ins. Co.*, No. 4:17-CV-87, 2017 WL 5890128, at *3 (E.D. Tex. Nov. 9, 2017) (finding that an expert's conclusory affidavit was insufficient summary judgment evidence where it failed "to provide the [c]ourt with any factual support or explanation of" its conclusions); *see also Contractors Source, Inc. v. Amegy Bank Nat'l Ass'n*, 462 S.W.3d 128, 137 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing cases) (determining that conclusory expert affidavits regarding a bank's failure to exercise ordinary care

presented "no evidence of a question of fact . . . ."). Defendant's objection to the Simmons Declaration is **SUSTAINED**.

B.     **Patel Declaration/Hayes Affidavit**

Notably, although there are no objections to either the Patel Declaration or the Hayes Affidavit, both contain the same types of conclusory statements as the Simmons Declaration. This raises the issue of whether those statements are properly considered, since "on a motion for summary judgment, the evidence proffered . . . to satisfy [the] burden of proof must be competent and admissible at trial." *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012). A court may *sua sponte* consider whether to exclude evidence at the summary judgment stage. *Id.* at 461; *see Ward v. Jackson State Univ.*, 602 F. App'x 1000, 1003 (5th Cir. 2015) (citing *Bellard*, 675 F.3d at 460).

*1.     Patel Declaration*

The Patel Declaration provides that he is Plaintiff's custodian of records and describes the contract between it and Multani, Multani's performance under the contract, and the facts surrounding the checks that it provided to Multani to subsequently distribute to subcontractors. (doc. 105-1 at 2-7, 9-11.) The declaration also states that Defendant "failed to exercise ordinary care when, among other things, [it] failed to determine whether the payee indorsements on the [s]ubcontractor [c]hecks were substantially similar to the designated payees on each of the [s]ubcontracter [c]hecks." (*Id*. at 7.) It concludes that as a result of Defendant's "wrongful acts or omissions, [Plaintiff] has been substantially injured." (*Id*. at 12.)

As noted, declarations "setting forth ultimate or conclusory facts and conclusions of law are insufficient to . . . defeat a motion for summary judgment." *Stagliano*, 633 F. App'x at 220 (quoting *Orthopedic & Sports Injury Clinic*, 922 F.2d at 225). The Patel Declaration does not provide "'any

7

factual support or explanation'" as a basis for its conclusory statements. *See Loiacano v. DISA Global Solutions, Inc.*, 659 F. App'x 772, 777 (5th Cir. 2016) (citing cases); *Orthopedic & Sports Injury Clinic*, 922 F.2d at 224–25. To the extent that it contains conclusory statements, it is not considered in reviewing Defendant's motion for summary judgment. *See Bellard*, 675 F.3d at 461 (finding that evidence may be excluded *sua sponte*); *Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992) (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 383 (5th Cir. 1987) (holding that a court should disregard the inadmissible portions of a challenged affidavit).

### 2. *Hayes Affidavit*

The Hayes Affidavit provides that Hayes is Defendant's Senior Vice President and Chief Financial Officer and describes how the checks were deposited, processed through its automated system in its regular course of business, and presented to F & M Bank for payment. (*See* doc. 101-2 at 124-26.) It states that Defendant did not and does not verify the identities of check indorsers, and makes conclusory statements that "[v]erification is and has always been the responsibility of the check casher," as is the normal practice of other banks in Dallas "who also receive checks from money service businesses such as check cashers . . . ." (*Id*. at 125-26.) It also contains conclusory statements that Defendant's method of processing checks through an automated system without requiring "anyone to look at each individual indorsement" is customary in the banking industry nationally and in the Dallas/Fort Worth Metroplex, and that Defendant does not deviate from the "practice used by other similarly situated banks." (*Id*. at 125-27.) The affidavit concludes that "a review of the checks at issue demonstrates that [Defendant] did not deviate from its duty of 'ordinary care,'" and that most of the checks were payable as they appeared "to have been indorsed

8

by a principal of the payee." (*Id*. at 128-29.)

The Hayes Affidavit essentially only provides the affiant's credentials to support its conclusory opinion that Defendant exercised ordinary care in paying the thirteen checks at issue because it followed its prescribed procedures and its procedures were similar to those of similarly situated banks. (*See* doc. 101-2 at 125-27.) It is "devoid of any factual support or explanation of the [affiant's] basis" for its conclusions that Defendant's procedures were customary of other similarly situated banks, however. *Loiacano*, 659 F. App'x at 777 (citing cases); *see Orthopedic & Sports Injury Clinic*, 922 F.2d at 224–25. To the extent the affidavit contains conclusory allegations and legal conclusions, those statements will also not be considered. *See Bellard*, 675 F.3d at 461 (determining it was proper to exclude evidence *sua sponte*); *Salas*, 980 F.2d at 304 (holding that a court should not strike an entire affidavit when portions are inadmissible); *see also Williamson*, 815 F.2d at 383 (holding that a court should disregard the inadmissible portions of a challenged affidavit).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party

9

can also meet its summary judgment burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325 (internal quotation omitted).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Id.* at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must show that the evidence is sufficient to support a resolution of the factual issue in her favor. *Anderson*, 477 U.S. at 249. "If the [nonmoving party's] theory is . . . senseless [where] no reasonable jury could find in its favor, [then] summary judgment should be granted." *Lottinger v. Shell Oil Co.*, 143 F. Supp. 2d 743, 751 (S.D. Tex. 2001) (quoting *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468–69 (1992)).

"The parties may satisfy their respective burdens by 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials.'" *Rooters v. State Farm Lloyds*, 428 F. App'x 441, 445 (5th Cir. 2011) (citing Fed. R. Civ. P. 56(c)(1)). While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). There is also "no genuine issue as to any material fact [if] a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Summary judgment in favor

of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.[7]

## IV. ANALYSIS

Defendant moves for summary judgment on Plaintiff's only cause of action under § 3.406(b) on grounds that "there is no evidence—and, in fact, conclusive proof to the contrary—that [it] failed to exercise ordinary care in accepting the checks at issue, or that any failure to exercise ordinary care contributed to [Plaintiff's] loss." (doc. 100 at 2-3.)

Section 3.406 of the Texas Business and Commerce Code provides:

(a) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

(b) Under Subsection (a), if the person asserting the preclusion fails to exercise ordinary care in paying or taking the instrument and that failure contributes to loss, the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss.

(c) Under Subsection (a), the burden of proving failure to exercise ordinary care is on the person asserting the preclusion. Under Subsection (b), the burden of proving failure to exercise ordinary care is on the person precluded.

Tex. Bus. & Comm. Code Ann. § 3.406(a)–(c).[8] It "sets forth a comparative fault allocation when

---

[7] Rule 56 imposes no obligation "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)).

[8] "It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)). Plaintiff asserts that Texas law applies because Defendant is located in Texas, and Defendant does not dispute that Texas law applies. *See De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984)) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue.").

11

both parties fail to exercise ordinary care which substantially contributed to the forged signature." *Helena Chem. Co. v. Texell Fed. Credit Union*, No. W-05-CA-052, 2007 WL 9711169, at *1 (W.D. Tex. Mar. 5, 2007); *see* Tex. Bus. & Comm. Code Ann. § 3.406.[9] Subsection (b) provides an affirmative cause of action for negligence under which a plaintiff may recover part of its loss by presenting proof that the defendant bank's failure to exercise ordinary care caused a portion of its loss. *See* Tex. Bus. & Comm. Code Ann. § 3.406(b); *Coastal Agric. Supply, Inc. v. JPMorgan Chase Bank, N.A.*, No. H-11-1968, 2013 WL 12097785 (S.D. Tex. Jan. 7, 2013) (recognizing that § 3.406(b) allows for an affirmative cause of action in negligence), *adopted in part by* 2013 WL 12098682 (S.D. Tex. Apr. 3, 2013).

> "Ordinary care" in the case of a person engaged in business means observance of reasonable commercial standards prevailing in the area in which the person is located, with respect to the business in which the person is engaged. In the case of a bank that takes an instrument for processing for collection or payment by automated means, reasonable commercial standards do not require the bank to examine the instrument if the failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage not disapproved by this chapter or Chapter 4.

Tex. Bus. & Comm. Code Ann. § 3.103(a)(9). If a bank processes an instrument by automated means, "both prongs must be proven for the [b]ank not to be required to examine the instrument paid by automated means." *Bank of Tex.*, 276 S.W.3d at 682 (citing Tex. Bus. & Comm. Code Ann. § 3.103(a)(9)).

A. **<u>Failure to Exercise Care</u>**

Defendant first moves for summary judgment on grounds that for purposes of § 3.406(b), the

---

[9] Once the requirements of both § 3.406(a) and (b) are met, "'the loss is allocated between the [parties] . . . according to the extent to which the failure of each to exercise ordinary care contributed to the loss." *Bank of Tex. v. VR Electric, Inc.*, 276 S.W.3d 671, 683 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (quoting Tex. Bus. & Comm. Code Ann. § 3.406(a)–(b)).

Hayes Affidavit conclusively proves that it did not fail to exercise ordinary care. (doc. 100 at 7-8.)[10]

As discussed, this affidavit makes only conclusory statements that Defendant "did not deviate from its duty of 'ordinary care,'" and that its procedures were consistent with those of the banking industry nationally and of banks in the Dallas/Fort Worth Metroplex. (*See* doc. 101-2 at 125-27.) These conclusory statements were found inadmissible. Defendant's only evidence that it exercised ordinary care as defined in § 3.103(a)(9) is the Hayes Affidavit stating just that. (*See* doc. 101-2 at 125-28.) It did not submit any other evidence of its internal procedures or evidence showing that its procedures did "not vary unreasonably from banking usage . . . ." *See* Tex. Bus. & Comm. Code Ann. § 3.103(a)(9). Accordingly, Defendant fails to meet its initial summary judgment burden on Plaintiff's claim that it failed to exercise ordinary care under § 3.406(b). The burden therefore does not shift to Plaintiff to identify evidence in the record raising a genuine issue of material fact as to Defendant's failure to exercise ordinary care based on Defendant's first argument.

B. **No Evidence of Defendant's Failure to Exercise Ordinary Care**

Defendant next moves for summary judgment on grounds that there is no evidence that it "breached any applicable standard of care by accepting [the] thirteen checks in the manner that it did, or that it violated its own standards or that those standards vary unreasonably from ordinary

---

[10] Plaintiff initially argues that it is not a precluded party under § 3.406(a). (doc. 104 at 20.) Satisfaction of § 3.406(a) is a prerequisite to pursuing a cause of action under the comparative fault provision of § 3.406(b), however. *See* Tex. Bus. & Comm. Code Ann. § 3.406(b) ("the loss is allocated between the person precluded and the person asserting the preclusion according to the extent to which the failure of each to exercise ordinary care contributed to the loss."); *Bank of Tex.*, 276 S.W.3d at 683 (determining liability under subsection (b) only after determining whether subsection (a) was met); *see also Coastal Agric. Supply, Inc.*, 2013 WL 12097785, at *6 (quoting *Venetian Blind & Floor Covering, Ltd. v. Wells Fargo Bank, N.A.*, No. H-08-2451, 2010 WL 547152, at *2 (S.D. Tex. Feb. 9, 2010)) (addressing requirements under a similar statute and finding that once the initial elements are met, "the burden then shifts to the [plaintiff] to present evidence which raises a fact issue as to whether the bank 'failed to exercise ordinary care with respect to the check.'"). A finding that Plaintiff is not a precluded party under § 3.406(a) because it did not fail to exercise ordinary care would effectively prevent it from seeking relief under § 3.406(b). Because Plaintiff's initial argument relates only to § 3.406(a), and Defendant only moves for summary judgment on Plaintiff's cause of action under § 3.406(b), it is unnecessary to first consider this argument.

13

banking usage in the area." (doc. 100 at 8.) It seeks to alternatively discharge its summary judgment burden by pointing to a lack of evidence supporting an essential element of Plaintiff's comparative fault claim, on which Plaintiff will bear the burden of proof. *See Celotex*, 477 U.S. at 325; *see also* Tex. Bus. & Comm. Code Ann. § 3.406(c) (placing the burden of proof on the plaintiff to prove that the defendant failed to exercise ordinary care under subsection (b)). Accordingly, the burden shifts to Plaintiff to identify evidence in the record that raises a genuine issue of material fact. *Celotex*, 477 U.S. at 322–24; *Little*, 37 F.3d at 1075.

Plaintiff points to the Simmons Declaration and the Patel Declaration to show that Defendant failed to exercise ordinary care in paying the checks at issue. (doc. 104 at 22-23.) As discussed above, however, the Simmons Declaration is wholly inadmissible. While the Patel Declaration has not been excluded in its entirety, its conclusory statements that Defendant failed to exercise ordinary care and contributed to Plaintiff's loss by failing to determine whether the indorsements were substantially similar to the designated payees on the checks have been found inadmissible because the declaration did not contain any factual support or explanation for its conclusions. *See Loiacano*, 659 F. App'x at 777. Additionally, reasonable commercial standards do not require that a bank examine every instrument if its "failure to examine does not violate the bank's prescribed procedures and the bank's procedures do not vary unreasonably from general banking usage . . . ." Tex. Bus. & Comm. Code Ann. § 3.103(a)(9). Even if the conclusory statements in the declarations were admissible, Plaintiff fails to present any evidence to show that Defendant's alleged failure to examine the checks at issue violated its prescribed procedures, or that its procedures varied from

general banking usage.[11] *See id*. Notably, the Fifth Circuit has affirmed a district court's finding under an identically worded Louisiana statute that the fact that a defendant "may have paid an item over a forged signature does not establish that [it] failed to exercise 'ordinary care.'" *Grodner & Assocs., APLLC v. Regions Bank*, 338 F. Supp. 3d 488, 500 (M.D. La. 2018) (determining whether a bank failed to exercise ordinary care under an identical Louisiana law), *aff'd*, 2019 WL 1299927 (5th Cir. Mar. 19, 2019).

Plaintiff has failed to meet its summary judgment burden to identify evidence in the record that raises a genuine issue of material fact as to Defendant's failure to exercise ordinary care. *Celotex*, 477 U.S. at 322-24; *Little*, 37 F.3d at 1075. Accordingly, Defendant is entitled to summary judgment on Plaintiff's only claim against it under Tex. Bus. & Comm. Code Ann. § 3.406(b). *See Contractors Source, Inc.*, 462 S.W.3d at 137 (determining that the defendant was entitled to summary judgment on a similar claim because the plaintiff failed to raise a fact issue regarding the defendant's exercise of ordinary care); *see also Grodner & Assocs., APLLC*, 338 F. Supp. 3d at 500 (finding that the plaintiff failed to demonstrate that the defendant bank failed to exercise ordinary care on summary judgment).

## V. CONCLUSION

Defendant's motion for summary judgment is **GRANTED**. By separate judgement, Plaintiff's claim against Defendant under Tex. Bus. & Comm. Code Ann. § 3.406 will be **DISMISSED with prejudice**.

---

[11] Although Plaintiff argues that Defendant failed to exercise ordinary care because the checks were not properly payable due to the indorsements not being substantially similar to the named payees on the checks, this is not the applicable ordinary care standard under Texas law. *See* Tex. Bus. & Comm. Code Ann. § 3.103(a)(9).

**SO ORDERED** on this 14th day of June, 2019.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE